IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| GLENN J. HOPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 11-3347 |
| | ) | |
| SPRINGFIELD HOUSING AUTHORITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

OPINION
---

RICHARD MILLS, U.S. District Judge:

Pending before the Court is Defendant Springfield Authority's Motion to Dismiss the Plaintiff's Pro Se Third Amended Complaint.

Plaintiff Glenn J. Hopkins's Motion to Add Additional Defendants and Motion in Limine are also pending before the Court.

In his Third Amended Complaint, Plaintiff Glenn J. Hopkins ("the Plaintiff" or "Hopkins") asserts that Defendant Springfield Housing Authority ("the Defendant" or "SHA") has violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12201 et seq ("ADA"). The Plaintiff claims the Defendant failed to accommodate a disabled person and

retaliated against him by enforcing its alleged violations of United States Housing and Urban Development ("HUD") regulations.

## I. FACTUAL BACKGROUND[1]

The Plaintiff alleges he is a disabled person as defined by the ADA and is qualified for Section 8 housing as a qualified individual with a disability. SHA is a state government agency providing for Section 8 Housing for qualified individuals and is regulated by Title II of the ADA and the Fair Housing Act.

The Plaintiff and his now-deceased wife, Cindy Hopkins, began residing at 1117 N. 4th Street, Springfield, Illinois 62702 in February of 2006. Cindy Hopkins died on February 5, 2010. The rent for this home is fixed by a bank mortgage at $700.00 per month.

The Plaintiff alleges that in 2007 SHA fraudulently entered into an agreement to subsidize the Plaintiff's rent in the amount of $547.00 per month, claiming he only had to pay $17.00 per month, when the Plaintiff had to pay $160.00 per month to avoid eviction under the Illinois Forcible

---

[1]For purposes of this motion, the Court assumes the truth of the allegations in the Plaintiff's Complaint.

Entry and Detainer Statute due to the alleged SHA violation.

The Plaintiff asserts he has no defense to eviction for nonpayment of the rent balance because SHA had no legal authority to require the landlord, Terry Hicks, to receive less than the mortgage payment due on the premises. The Plaintiff contends the Defendant's action was a failure to accommodate that has defrauded the Plaintiff in excess of $6,864.00 since 2007.

The Plaintiff contends Cindy Hopkins died due to substandard medical care from a fraudulently denied workers compensation claim, which he states is the subject a of a wrongful death claim. The Defendant was given notice of Cindy Hopkins's death. The Plaintiff states that their daughter-in-law, Shannon Hopkins, subsequently moved out of the residence because she was no longer needed to care for Cindy Hopkins.

The Plaintiff states his income from social security was $557.00 per month from February 2006 until August 2010, at which time it increased to $810.00 per month.

The Plaintiff alleges that in April of 2011, SHA elected to abate the

subsidy of household membership, in violation of HUD regulation 24 C.F.R. § 882.509, and require him to repay the subsidies from February of 2010 to April of 2011, allegedly claiming that Hopkins was not entitled to the subsidy for a three-bedroom house and was required to pay back the difference under SHA rules that were not specified. The Plaintiff refused to pay the difference and claimed that this was a failure to accommodate his disability. He alleges the rules could not be retroactively applied in this manner and, by abating the subsidy, the Defendant would be causing constructive eviction or starvation. The Plaintiff contends that an SHA representative essentially responded by stating that the Section 8 program was for disabled women with children and, as a disabled man, he was ineligible.

The Plaintiff states that he filed a complaint with Illinois United States Senator Richard Durbin, which is attached as an exhibit to the Third Amended Complaint. The Plaintiff alleges that, in order to avoid eviction while the complaint was processed, Hopkins took out loans to pay the rent thereby incurring $1,400.00 of additional debt, resulting in serious

4

hardship and starvation.

The Plaintiff alleges that in response to his complaints to Senator Durbin, SHA scheduled an emergency housing inspection. Hopkins claims that at the time, he was packing and preparing to move due to the constructive eviction. The inspection found the house in disarray from the moving process and the inspector cited Hopkins for not having a clean house. The Plaintiff filed another complaint with HUD, which is attached to his Third Amended Complaint. Attached also is correspondence dated July 14, 2011 from Trina Dunbar, the Defendant's specialist, whereby the Plaintiff was informed his subsidy was reinstated.

The Plaintiff alleges that, on or about July 15, 2011, SHA inspector Matt David falsified an inspection report by claiming to have done another inspection. Hopkins claims he was at the doctor's office and not home for this alleged inspection, there was no one in the home to allow entry and he did not sign the report as asserted. The Plaintiff alleges this "fraudulent" inspection report repeated the prior finding, implying he had done nothing to come in to compliance which warranted eviction. The Plaintiff was never

given a copy of the inspection report, only a report of this from his landlord.

The Plaintiff asserts that without notice to him, Trina Dunbar breached the agreement on July 21, 2011, abating the subsidy for the unspecified reason of household membership change, which Hopkins claims violated the applicable federal regulation. This resulted in a future constructive eviction and constituted retaliation.

The Plaintiff complained of this alleged fraud to HUD. As provided in Exhibit E, HUD investigated and dismissed the complaint and notified the Plaintiff of his right to pursue legal redress.

The Plaintiff alleges that SHA performed another inspection. Hopkins claims that although he was told the residence complied with all requirements, the inspector's report provided there were a number of violations.

The Plaintiff received notice from Terry Hicks that the subsidy was being cut effective as of October 2011 and that the residence had again failed inspection. Terry Hicks informed the Plaintiff if this matter was not

resolved, Hopkins would have to move or pay the rent in full.

The Plaintiff received notice from Vanita Bresnahan that he had to enter into a repayment plan or have his subsidy terminated, which Hopkins alleges is fraud.

The Plaintiff contends that after the filing and serving of the complaint, SHA agents persisted in harassment and attempts to falsify records by sending Housing Inspector Matt David to perform another inspection on September 21, 2011. Hopkins claims David made no attempt to knock and instead left a note. The Plaintiff asserts that SHA falsely reported him as a "no show" and attempted to force another inspection in which Hopkins had reason to believe was for fraud.

The Plaintiff alleges that on the date of the fifth inspection, the inspector arrived with papers that he was required to sign without reading. Hopkins refused to allow the inspection or sign the papers.

## II. DISCUSSION

A. Legal standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must

"state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although factual allegations at this stage are accepted as true, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 885 (7th Cir. 2012) (citing Iqbal, 556 U.S. at 678).

A plaintiff cannot survive a motion to dismiss by merely providing notice of a claim. See Adams v. City of Indianapolis, 742 F.3d 720, 728-29 (7th Cir. 2014). Because of the plausibility requirement, "the court must review the complaint to determine whether it contains 'enough fact to raise a reasonable expectation that discovery will reveal evidence' to support liability for the wrongdoing alleged." Id. at 729 (quoting Twombly, 550 U.S. at 556).

B. ADA failure to accommodate and retaliation

8

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity." 42 U.S.C. § 12132. A plaintiff alleging discrimination under Title II must ultimately prove: "(1) the defendant intentionally acted on the basis of the disability; (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionately impacts disabled people." CTL ex rel. Trebatoski v. Ashland School Dist., 743 F.3d 524, 528-29 (7th Cir. 2014) (citations omitted). "Accommodations are only required when necessary to avoid discrimination on the basis of a disability." Id. at 529 (internal quotation marks and citation omitted).

In order to prove retaliation, a plaintiff must present evidence that: (1) he engaged in statutorily protected activity; (2) he was subjected by the defendant to an adverse action; and (3) there is a causal connection between the two events. See Povey v. City of Jeffersonville, Ind., 697 F.3d 619, 624 (7th Cir. 2012).

The Plaintiff alleges that Defendant failed to accommodate a disabled

9

person by refusing to modify its alleged violations of HUD regulations and by enforcing its alleged violations of HUD regulations. Hopkins further alleges that Defendants's actions violated the ADA and were in retaliation for his complaints. Based on the facts alleged in the Plaintiff's Complaint and attachment thereto, the Plaintiff's failure to accommodate and retaliation theories fail.

The federal government subsidizes housing under Section 8 of the United States Housing Act, as amended, 42 U.S.C. § 1437f (1982). Under Section 8 programs, private landlords agree to rent their property to eligible low-income families. In return, "the federal government contracts with the landlord to pay the difference between a fair market rent and the amount the low-income tenants can afford." Eidson v. Pierce, 745 F.2d 453, 454 (7th Cir. 1984). The private owner must apply the eligibility criteria based on income and family size. See id. at 459.

This Court in Kahn v. Bland, 2009 WL 395783, (C.D. Ill. Feb. 18, 2009) discussed how the program worked, as follows:

> The program allowed low income families to rent units in the private market that were subsidized by the federal government.

> The prospective program member must come to the Housing Authority for an eligibility determination. The HA has the tenant fill out documentation on family size and income. The amount of the subsidy paid by the government depends on household composition and income.

Id. at *4. If an individual qualifies for the program, a Housing Quality Standards (HQS) inspection is ordered for the unit. See id. When a unit passes inspection, a Housing Assistance Payment (HAP) contract is sent to the landlord. See id. A HQS inspection is required every year and the unit must pass the inspection in order for the contract to be renewed. See id. The Housing Authority can terminate the HAP contract if the HQS inspection is a failure. See id.

Here, the Court concludes that, even when the allegations of the Third Amended Complaint are taken as true, the Plaintiff is unable to allege an ADA claim for failure to accommodate or retaliation. Initially, the Court notes that Plaintiff does not identify his alleged disability.

More importantly, the Plaintiff's Complaint and attachments establish that his subsidy was cut due to a reduction in the number of members of his household. Because the Plaintiff's wife died and his

11

daughter-in-law moved, fewer individuals occupied the home. The Complaint and supporting documents establish this is why the Plaintiff's subsidy was reduced.

Therefore, even assuming the Plaintiff qualifies as disabled, he is unable to assert a prima facie failure to accommodate claim because the Defendant did not act on the basis of his disability. For similar reasons, even assuming that Plaintiff's complaints to Senator Durbin and HUD qualify as protected activity, the Plaintiff is unable to allege a retaliation claim. The Plaintiff is unable to allege a claim which has facial plausibility because his Complaint and exhibits establish that his subsidy was reduced due to a change in household membership.

As the Defendant asserts, moreover, the Plaintiff has alleged he was first advised in April of 2011 that his subsidy would be reduced and repayment would be required as a result of a change in household membership. It was after receiving this notification that Plaintiff made a complaint to Senator Durbin and HUD. Because the alleged adverse action preceded the Plaintiff's protected activity, the Plaintiff is unable to

plausibly allege there was a causal connection between the two events. Accordingly, the Plaintiff's ADA retaliation claim in Count I fails for that additional reason.

### C. Fair Housing Act claim

Next, the Plaintiff alleges in Count II that "Defendant has failed to accommodate a disabled person by refusing to modify inapplicable rules, policy and procedures with reckless disregard to the health, safety and welfare of a disabled person in retaliatory violation of 42 U.S.C. § 3604(f)(3)(B) of the Fair Housing Act." The words "retaliatory violation" do not appear in the cited portion of the FHA, which provides that "discrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling." See 42 U.S.C. § 3604(f)(3)(B). Accordingly, the Court concludes the Plaintiff is alleging a failure to accommodate claim under the FHA.

For the reasons previously stated, the Plaintiff's claim asserted in

Count II also fails. The Plaintiff has neither alleged that an accommodation was requested of the Defendant nor that a requested accommodation could be linked to a disability. The Third Amended Complaint alleges that the subsidy change was due to a decrease in the number of people residing in the Plaintiff's home. Paragraph 8 of Count II states, "That in April 2011, SHA elected to abate Hopkins subsidy for reason of household membership in violation of HUD regulation 24 C.F.R. § 882.509, and require Hopkins to repay all the subsidy from February 2010 to April 2011, allegedly claiming that Glenn Hopkins was not entitled to the subsidy for a three bedroom house, and was required to pay back the difference under SHA rules that were not specified."

Section 882.509 provides:

> If the PHA determines that a Contract unit is not decent, safe, and sanitary by reason of increase in Family size, or that a Contract unit is larger than appropriate for the size of the Family in occupancy, housing assistance payments with respect to the unit will not be abated; However, the Owner must offer the Family a suitable alternative unit should one be available and the Family will be required to move. If the Owner does not have a suitable available unit, the PHA must assist the Family in locating other standard housing in the locality within the

> Family's ability to pay and require the Family to move to such a unit as soon as possible. In no case will a Family be forced to move nor will housing assistance payments under the Contract be terminated unless the Family rejects without good reason the offer of a unit which the PHA judges to be acceptable.

24 C.F.R. § 882.509. The text of the regulation reflects that the "housing assistance payments" referenced therein are made from the Public Housing Authority (PHA) directly to the owner or landlord of the property. The duty owed to the tenant under 24 C.F.R. § 882.509 by the PHA arises if the owner (landlord) does not have a suitable available unit. The Plaintiff does not allege that Defendant failed to comply with its obligations under 24 C.F.R. § 882.509. There are no factual allegations tending to show that Defendant violated the cited regulation.

Additionally, the Plaintiff has not alleged any facts tending to show that he was treated any differently because of his alleged disability or for any other reason than any other non-disabled individual or family, when the Defendant determined that a Contract Unit was not decent, safe, or sanitary due to increase in family size or that a Contract Unit was larger than appropriate for the size of a family in occupancy.

15

To the extent the Plaintiff in Count II alleges that Defendant discriminated against him by requiring him to repay all subsidies from February 2010 to April 2011 in violation of 24 C.F.R. § 882.509, the Plaintiff's own allegations demonstrate the assertion is inaccurate. The Plaintiff states that his wife died in February 2010 and his daughter-in-law moved out soon thereafter. Hopkins provides no basis for his claim that he should not be required to repay the subsidy from which he benefitted, despite not being entitled to the funds from February 2010 to April 2011.

The Plaintiff has failed to allege any facts suggesting he was treated differently because of his alleged disability, or for any other reason, than any other Section 8 tenant when the landlord determined that the tenant owed repayment of a previously paid subsidy to which the landlord alleged the tenant was not entitled due to an undisclosed decrease in the number of persons residing in the relevant Contract Unit. The duty of reasonable accommodation and rules, promises, practices or services is confined to rules, policies or services that hurt handicapped people by reason of their handicap and not by a trait they may have in common with other

16

individuals, such as a limited amount of money to pay on housing. See Hemisphere Bldg. Co. v. Village of Richton Park, 171 F.3d 437, 440 (7th Cir. 1999).

Based on the foregoing, the Plaintiff's Fair Housing Act claim asserted in Count II is without merit and will be dismissed.

D. Section 1983 claim

In Count III, the Plaintiff alleges that SHA agents in retaliatory violation of 42 U.S.C. § 12203 conspired to falsify records and inspection reports to justify violation of the Plaintiff's rights under the ADA and Fair Housing Act by the "curtailment and termination of the subsidy with intent to cause constructive eviction with reckless disregard for the health, safety, and welfare of a disabled person in violation of 42 U.S.C. § 1983."

Section 1983 creates a federal cause of action for alleged violations, pursuant to state action, of a citizen's rights, privileges or immunities secured by the Constitution and Laws of the United States. "Section 1983 does not create substantive rights, but operates as a means for vindicating federal rights conferred elsewhere." Levin v. Madigan, 692 F.3d 607, 611

17

(7th Cir. 2012) (internal quotation marks and citation omitted). Count III alleges only violations of the ADA and Fair Housing Act.

The Court concludes that Plaintiff cannot assert a separate § 1983 cause of action for deprivation of his rights under either the ADA or the Fair Housing Act. While a plaintiff may bring a § 1983 suit to enforce rights defined by federal statutes, "[a]n exception to this general rule exists when a comprehensive remedial scheme evinces a congressional intent to foreclose resort to section 1983 for remedy of statutory violations." Alsbrook v. City of Maumelle, 184 F.3d 999, 1011 (8th Cir. 1999) (citing Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 10-21 (1981)).

The Court presumes that Congress intended for the enforcement mechanisms provided in the ADA and Fair Housing Acts to be exclusive. Because the Plaintiff has not alleged the deprivation of any other right, privilege or immunity secured by the Constitution or laws of the United States, the Plaintiff's § 1983 claims asserted in Count III shall be dismissed.

E. Fraud claim

In Count IV, the Plaintiff appears to allege a common law fraud claim. Having determined that Plaintiff's federal claims will be dismissed because he has failed to allege a plausible claim as to Counts I, II and III of the Complaint, the Court declines to exercise its supplemental jurisdiction over the state law claim alleged in Count IV. See 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

For the reasons stated herein, the Plaintiff has failed to assert a claim that has facial plausibility. Accordingly, the Defendant's Motion to Dismiss will be Allowed.

The Plaintiff has filed a Motion to Add Additional Defendants. The Court has reviewed the motion, wherein he seeks leave to assert a claim under the Federal Tort Claims Act, 28 U.S.C. § 1346, against the United States of America. Upon reviewing the motion, the Court concludes that the proposed claim would be futile.

The Plaintiff has also filed a Motion in Limine, wherein he asks the Court to strike a number of documents. The Court finds the motion to be without merit.

Ergo, the Motion of Defendant Springfield Housing Authority to Dismiss the Plaintiff's Third Amended Complaint pursuant to Rule 12(b)(6) [de/ 31] is ALLOWED.

Counts I, II and III are Dismissed with Prejudice.

Count IV is Dismissed without Prejudice.

The Plaintiff's Motion for Leave to Add a Defendant and Additional Claims [d/e 56] is DENIED.

The Plaintiff's Motion in Limine [d/e 64] is DENIED.

The Clerk shall enter Judgment in favor of the Springfield Housing Authority and terminate the case.

ENTER: July 21, 2014

    FOR THE COURT:

                                        s/Richard Mills
                                        Richard Mills
                                        United States District Judge